456 So.2d 1314 (1984)
Luis C. MORSE, Petitioner,
v.
The DADE COUNTY CANVASSING BOARD; George Firestone, Secretary of the State of Florida; Humberto Cortina; and Evaristo L. Marina, Respondents.
No. 84-2052.
District Court of Appeal of Florida, Third District.
October 9, 1984.
Barnett, Alagia, Zamora & Suarez, Miami and Joseph J. Portuondo, Salinas, Cal., for petitioner.
Robert A. Ginsburg, County Atty. and Murray A. Greenberg, Asst. County Atty., Ellis Ruben, Miami, for respondents.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Luis C. Morse, a candidate for election to the Florida House of Representatives, seeks review of a trial court order which invalidated a primary election in a single district.
The question presented is whether the trial court may entertain a petition brought by the county canvassing board seeking to void an election, and then order a new election on a showing only that there is a significant statistical variance between an original count and a recount. We reverse, holding that (1) the canvassing board had no standing to challenge the election results, and (2) in the absence of a protest to an election result filed by a candidate or an elector qualified to vote in the election related *1315 to such candidacy, the circuit court was without jurisdiction to act.
The pertinent facts are as follows. On September 4, 1984, the election for the Republican nomination for state representative in District 113 was held as part of the county-wide elections. The initial electronic tabulation of the voting showed Luis Morse as the winner with 2,314 votes; Humberto Cortina, the incumbent, in second place with 1,665 votes; and Evaristo Marina in third place with 1,614 votes. Morse and Cortina thus qualified for a run-off. Marina filed a request for, and was granted a recount. By the recount held on September 11, 1984, Morse lost four votes (2,310), Marina gained 19 votes (1,633), and Cortina lost 58 votes (1,607), which changed the outcome, placing Marina in the run-off and eliminating Cortina. This recount was electronically computed in the same manner as the initial vote.[1] Marina, with permission of the Dade County Canvassing Board (hereafter "the board") and under its supervision, personally counted the ballots. As a result of this hand count Morse lost another 13 votes (2,297), Marina's votes remained the same as the first recount (1,633), and Cortina lost another three votes (1,604). The board, on its own initiative, began to count the votes by hand but never finished that count. Tests ordered by the board indicated that all equipment was tabulating and functioning normally in both the initial tabulation and the first recount. An investigation by the State Attorney's office was ordered by the board just prior to the hearing, and was ongoing when the matter came before the court. The Metro-Dade Police Department conducted a laboratory test to examine the perforations in the ballots and to determine whether there were any irregularities. Those tests were inconclusive as to tampering.
The board commenced a declaratory action in the circuit court, pursuant to Section 86.011, Florida Statutes (1983), and obtained an emergency hearing to determine whether a new election between all three candidates should be held. At the hearing the board asserted that it was "uncomfortable" in certifying the initial count or the recount because of an inexplicable and significant variance between the two counts. The supervisor of elections, who is also a member of the board, testified that he could not say with absolute certainty that the ballot cards had not been altered in some way between the first and second counts. The board's position at the hearing was that there was no accusation, allegation, or indication of tampering, but that ballot tampering was one possible explanation for the variance.
Without factual findings, the trial court entered its final order of September 14, 1984 which (1) declared the results of the initial September 4th election and the September 11th recount in the Republican primary election for the Florida House of Representatives, District 113, null and void, and (2) ordered a new election to take place on October 2nd, between all three candidates, with a possible run-off election to be held on October 9th.
The duties of the county canvassing board are set out in Section 102.141, Florida Statutes (1983). Subsections (3) and (4) impose upon the board the duty to examine the counters on voting machines or the tabulation of ballots cast and to determine whether the returns correctly reflect the number of votes cast. Even where there is a discrepancy between the tabulation of ballots and the returns, the statute requires that tabulation of ballots be presumed correct and that the board canvass the votes accordingly. After completion of the canvassing pursuant to Section 102.141 the board is obligated, in the absence of a protest, to certify the results to the Department of State, the clerk of the circuit court, and the supervisor of elections. § 102.151, Fla. Stat. (1983).
*1316 It is not the court's business to determine which candidate should be certified or to otherwise relieve the board of its certification responsibility absent a well-founded protest. Further, the canvassing board is a neutral body whose functions are ministerial in nature. The role of a petitioner or plaintiff in a circuit court action where the relief sought is invalidation of an election is an adversarial stance entirely inconsistent with the board's duties.
It makes no difference that the canvassing board sought to void the election by the vehicle of declaratory judgment rather than by the mechanism of Chapter 102. Our conclusion here is that, on either theory, the board is without standing to question the results of an election.
The canvassing board contends that because it is a proper defendant under Section 102.168, it should also have standing to challenge the election in this case. If it were necessary, we, in all probability, would reject that argument, but since Section 102.168 is not applicable we do not reach the question. That section may be invoked only after election results have been certified by the canvassing board and a complaint has been filed in the circuit court by an unsuccessful candidate or nominee. Here, the election results have not been certified so there is no "unsuccessful candidate." The circuit court's jurisdiction could have been invoked here pursuant to Section 102.166 only by a protest alleging fraud filed by a "candidate for nomination or election, or any elector qualified to vote in the election related to such candidacy." The protest must be (1) filed in approved form, (2) sworn to as having a factual basis, and (3) presented to the circuit court. The circuit court is then empowered to conduct hearings and order that the sworn allegations in the protest be investigated, examined, or checked. In the absence of a properly filed protest, sufficient in form and substance, the circuit court is without jurisdiction to order any relief.
Reversed and remanded with instructions to dismiss the board's petition with prejudice.[2]
NOTES
[1] It is not clear whether candidate Marina physically handled the ballots prior to the first recount.
[2] Our decision was announced after oral argument on September 20, 1984. The parties were advised that this written opinion would soon follow.